May it please the Court, Your Honors. Russell Mace here on behalf of Juan Calderon. Good morning, Judge Gregory, Judge Wilkinson, Judge King. I realize today that going through our brief raised several issues on appeal, but I would, am I speaking loud enough, Judge King? You're fine. Okay. Oh, yeah. Your turn. Okay. Two of those issues are of primary concern, I believe. Some of the other issues may take a second seat to the argument today. The first issue was the limitation of the cross-examination by defense counsel during the trial. I'm going to ask the Court to look at this in a different light than. What's your second main issue? The second main issue is a Crawford violation statements that were introduced in violation of Crawford, and I'm going to ask the Court to look at this, and I know I have a very large hill to climb to get the Court to look at this in the manner that I propose. It's my contention that the standard of review should not be an abuse of discretion, but should actually be a de novo standard, and the reason I make that contention is I believe Crawford is also implicated in that limitation of cross-examination. That limitation, for all practical purposes, is curable just as the 404B evidence is curable by jury instruction. The Court's... What's your, specifically, as you can, what's your problem with the limitation on cross-examination and what's your role you're interested in? What, and I don't have as much experience as some lawyers, but I do have enough trial experience to know that over time, the ability to cross-examine witnesses has deteriorated, and the analysis that I see is particularly in federal criminal trials, we are kind of constrained as to what we can ask witnesses when it goes directly to the reason they're testifying. In this case, in particular, there were several co-defendants, and I'm familiar with the Cropp case, and I think it's the Banner case. On those limitations... You mean there were co-defendants who had turned and were testifying against your man, and who implicated your man, and were hoping for a reduction in sentence? And, Judge, that's exactly what has become the common day federal criminal trial, or the flips, as we call them in practice. They're coming in and testifying, and without the ability, when you have 12 or 14 jurors sitting there, and what I've noticed in the case law in these situations, the district courts, and the appellate courts, and even the Supreme Court, they seem to be fine with defense attorneys being able to cross-examine witnesses and saying, severe penalty. Did the witnesses have formal plea bargains? Did they have formal plea agreement? Some of them did. Did you bring those out? I was not the trial counsel, but they were brought out. Plea agreements were laid on the table, basically, before the jury. I don't know if they were laid on the table before the jury. But it was, I mean, as I understand it, some of the witnesses had formal plea agreements that were memorialized, and others just had an expectation? That's correct, Judge, but in those plea agreements, in particular with the federal defendants, the 5K1 and the Rule 35, those are expectations, and the analysis or the analogy that I would propose to this court, imagine a civil trial where your expert witness is there on a contingency fee. If he testifies well and the plaintiff wins, he gets a percentage of the money recovered for the plaintiff. When you get co-defendants and flips from jail, or anyone else who's receiving a benefit based on their testimony, they're not testifying to tell the truth, they're testifying to benefit themselves. You think the Kropp case is wrong, then? Absolutely, I think it's wrong. Okay, but it's wrong, but it's precedent in this court. And Judge? Now, how do we get around it? Assuming you're saying it's wrong, how do we deal with it? Do we distinguish it, or do we, we can't change it? We can go down the hall. We have to follow it. We can go down the hall, as the court did earlier this morning. We don't have an en banc ruling, you haven't asked for an en banc ruling. I'm going to. Meaning of the court? Well, you haven't lost here yet. You haven't lost yet. But you, I thought you'd say the Kropp was distinguishable. Based on my prior record in this courthouse, I haven't, I'll be asking for an en banc. That's a pretty uphill battle. I thought you'd say it was distinguishable, that it's different. It is. But what I'm asking for. But you haven't, now you're saying you want it overruled. We don't have any power to overrule it, we might as well quit here now. Judge, that's why I originally started my statement with I know I have a large uphill battle. But I'm asking, what I'm asking for the court to do is to look at the current state of witness testimony, specifically in our criminal trials. We end up with the majority of the witnesses being co-defendants and flips. We don't end up, rarely have I seen a case, especially in the District of South Dakota. And all you're saying is that the jury ought to know what they were facing. Or what they were facing when they flipped and what they're facing as they're testifying and what they're hoping for. Judge, that's what you want to come out. Absolutely. Well, and I don't know that Judge Irvin would disagree with that. The Crop case, the prospect, the question is whether the circumscribed, a little bit of that circumscribed by the trial judge under specific circumstances is error. Or even if it's error, whether it's harmless. In the context of this case, for example, that's what we're looking at, this case. Context of this case was the evidence was overwhelming anyhow. Without all these cooperating witnesses. Your man, out of his own mouth, said a lot of things. Judge, I don't disagree with the facts that are on the record. But what I'm urging the court to consider is the problem that is developing and has developed. We're not here to fix general problems. We're here to look at your man's case. And Judge, this specific case can fix a general problem. Well, why do we want to be worried about the general problem? We have to take case by case. I mean, it seems to me you're acting like you really didn't get cross-examining at all. But you did. I mean, Judge Childs, it was clear that many of the witnesses had plea agreements with the governor. And that those plea agreements with the government would result in substantially lesser sentences. And you got into the fact that many of the other cooperating witnesses face severe penalties. You can say that they face harsh penalties that come before the jury. There wasn't any problem with that. And that you got in before the jury, that they expected to get a big break. They expected to receive lesser sentences as a result of their guilty pleas. I mean, the substance of it, the gist of it, was put before the jury. And it seemed to me what you wanted was that we will go into specific guideline ranges, which, you know, is sometimes hard for us to figure out exactly what the guidelines mandate and what the guidelines range is. And it seemed to me you wanted to go into the guidelines. We were going to have to have a guidelines calculation prior to the cross-examination. We were going to have to agree on a guidelines range and say, well, here's what the guidelines range would have been. And here's what the 5K1 motion or the substantial assistance motion would result in. And that's what I thought Judge Irvin's opinion in Cropp said you didn't do, that you get the substance. You get to bring across to the jury the substance of the point. But you don't have a pre-sentencing hearing, or you don't have a sentencing hearing prior to asking the question on cross-examination. That's going to be very, first of all, I don't know the jury would entirely understand it, but second of all, it would complicate things quite a bit when you've already got a chance to bring the essence of your argument and the essence of your point, which was that these witnesses are receiving a big break. They're facing harsh sentences, and they're receiving a big break. And they're convicted felons. You got to show all that. You got to show all that. And basically, you've got to stand up there and argue they're a bunch of scoundrels anyway. And that's what they're facing. I don't disagree with that. But with all due respect, Judge, when you have 12, everybody, I would assume, and I think most people realize when you're in federal court, it's not a joke. It's a very serious courtroom. People face serious charges when they're in federal court. I don't think there's any jury out there that believes that they're going to see a federal cocaine trial and the defendant is found guilty and gets probation. I don't think that's in their mindset. But what is probably not in a federal jury's mindset is the concept that you're now facing 40 years based on the plea that you took. And now the government's going to come back and give you five years. That's what your expectation is. Your expectation is 35 years off that sentence. Were you trying to show guideline possibility, or were you trying to show maximum sentences, or both? I think both would be appropriate. You were trying to show both. What the maximum sentence was they faced, and what their potential guidelines were. And if you could, try to show what they're hoping for. All you're going to get on hopes is that they had hopes. And I understand the case law, that it's the subjective belief of the person testifying, the actual witness as to what they're going to be faced with. But the problem- You don't have to use every adjective you want. You could have used harsh, severe, extremely long, you know, all of those kind of things. And that you're expected to catch a big break. In other words, I don't actually put any restrictions on any adjectives. And that's exactly the problem with the current state of the restrictions. Those adjectives are nowhere near sufficient enough to inform- Each person in this room has a different definition of the word severe. Each person has a different definition of a great break. A great break can- But you had plenty to argue about here. You had a lot to argue about. But you had more to just argue about than to deal with than these witnesses. You had evidence, strong evidence, otherwise, that was implicating your client. Judge, aside from that, the strongest evidence are the people that flipped against him and testified against him. And without exploring their motivation, that is a serious motivator- Explore their motivation. The motivation was they wanted to get a big break, in your view. But Judge, the jury doesn't know what a big break is. If they don't know that they're saving decades- Left it open for you to argue about it. Left it open for you to argue about it. But under the evidence, you could argue that they might even walk out of the courtroom. I mean, it was open-ended, wasn't it? I don't believe it was open-ended. Okay. I believe Judge Childs restricted it. Now, I wasn't present. I'm talking about the argument was open-ended, based on this evidence. Judge, I don't think it was open-ended. Maybe you can interpret it in a manner more favorable to your client, because the actual break they might have received was a 5K1 motion or a substantial assistance motion, which would have reduced the sentence. So, if you were going to argue in general terms, look, there's going to be a huge sentence, a severe sentence, a harsh sentence, and these people are going to get a big break and a you know, I think Judge King alluded to it, all the jury knows it could be interpreted in a way that's favorable to your client, which is that these people are going to go scot-free. They're just going to walk out. They're going to go free. So, it doesn't necessarily, it isn't necessarily prejudicial to you. You can paint it in dramatic terms. You can use every florid adjective in the book. And Judge, my contention would be every adjective in the book doesn't adequately describe decades of a sentence being reduced and giving a jury a specific detail of what this particular witness is saving themselves. You can give details in this way. You can say, look, these folks are facing severe sentences, and think of what a severe sentence would mean to this individual. It would mean he's separated from his family, he's confined, his freedom of movement is restricted, his ability to get a job is impaired, and he wants to do anything he can to avoid those consequences by receiving a shorter sentence so he can be back with his family and have a chance to resume his life. You can make hay with that. A good lawyer, and I know you're one, would have a lot of fun with it. Just painting, in very human terms, how much it means to someone who's incarcerated to have their sentence even cut by two years, much less the big break these folks are getting. I mean, I think there's, I mean, Judge Childs followed the law of the circuit, followed the precedent of the circuit, as I can see, and gave you a fair trial. I don't think that this was unfair, but you can tell me why I'm wrong on rebuttal. I know we're not going to agree. Thank you, Judge. Thank you. May it please the Court. In this circuit, and specifically in the Turner case, this Court has recognized the premise that trial courts have wide latitude in restricting cross-examination of the government's witnesses in criminal cases. Not to the extent that it violates the Sixth Amendment. And that's correct, Your Honor. But, as the... The Confrontation Clause has to be observed. And did you put the plea agreements in evidence yourself? I did not, Your Honor. Why didn't you do that? Because I chose... That would be the best way for the government to do this. It wouldn't have anything to argue about. Put the witness up there. Everybody knows he's a convicted felon, and he's turned, and he's... Lay it all out on the table. And how I did it at trial, Your Honor, I had the plea agreements marked as exhibits, showed the witness to the plea agreements, and had the witness testify as to what their understanding of the plea agreements was as it related to their duty when they testified. But the terms of the plea agreement would be what would be the best evidence of what his deal was. It was laid right out, and it said what his potential punishment was.  That's correct. The plea agreement did contain the potential... And it probably said that the ultimate punishment's in the discretion of the court, and all that stuff. But most of the time, that's the kind of thing we see coming up here, that the terms of the plea, particularly as to punishment, comes in. Well, and... Comes in. Now, you've got the strong argument there. Well, if it doesn't come in, it's still just a question of abuse of discretion. But why do you give them that issue to come out here with? Well, and, Your Honor, I would... They got a good case anyway. Yes, sir. And I would argue, Your Honor, first, as it relates to the relevant portions of the plea agreement as to what their duties are when they testify, as to who files the motion, should their testimony constitute substantial... Did the defense lawyer want to keep the plea agreements out? All I can say, he did not introduce the plea agreements, and they were in court. And he had the capability to introduce those plea agreements. No, but you could have put them in on direct examination. That's correct. You don't have to just put the cards on the table with this witness. I mean, these are not the kind of witnesses that most parties want. The government doesn't. You have to take them where you find them. Yes, sir. But lots of times, and I know even that they teach at these prosecutor schools, go ahead and lay it all out on the table, and you take the steam out of the cross-examination even. And, Your Honor... By doing it that way. But I was, and I think Mr. King, he's been around the block on this stuff, and he knows what it's about. But I was under the impression that the plea agreements had been entered in as exhibits, and were available to the defense, had the defense sought to introduce them? They were not introduced as exhibits, but they were available to defense counsel. Did they offer them? Did defense counsel offer them? No, Your Honor. They did not offer them. Well, maybe they waived this argument then. That's a possibility. But you didn't, you haven't raised that point. That they waived the argument. Could the defense have introduced the plea agreements themselves for the consideration of the jury? They did have that capability, yes, sir. And those plea agreements were provided in discovery to defense counsel. That is correct. They could have introduced them. That's correct. In all candor, though, Your Honor, in light of the court's ruling, our standard plea agreements on page two generally, page one contains the elements, page two contains the applicable statutory penalties based on the violation. So, I would argue, in light of the district court's ruling, even if they had introduced those plea agreements, likely the penalty portion of it... Well, that's the part we're talking about, though. Right. That would have been excerpted. That's correct. Exactly. So, the question, then, up here, the question is whether excerpting those penalties, which says that this witness, X, faces 50 years in the penitentiary, gives him a lot of motivation for getting up there and implicating Mr. Bases' client, whether that's a denial of Mr. Calderon's Sixth Amendment. We've said clearly the confrontation clause is still the law, of course, and what we say has to be consistent with that and what courts rule on restricting cross-examination of these folks has to be conformity with that. Yes, Your Honor, and I would argue that the Kropp case is very instructive. And the government, here, you've got a strong case anyway, why do you stir up these issues? That's what I don't understand. And, Your Honor, it was unintentional. And I would tell you that, after this case, it has been my practice to introduce the plea agreements in the entirety with the penalties redacted. Under the impression they wanted something more. Well, you said you introduced it with the penalty redacted. I marked them for identification. They were not introduced in this case. Now I introduce them with the penalties redacted. Well, why do you redact the penalty? That's what the defendant wants in there. And, Your Honor, the reason... Unless the defense lawyer says redacted, why wouldn't you just introduce it? Because I believed in the direct examination of... I went to great pains on direct and enlisting what the arrangement was as to what their duty was when the witnesses testified, who made the motion for a downward departure pursuant to 5K1.1, should the testimony rise in substantial assistance, and, ultimately, who decided whether or not they would get a reduction. But the penalty faced, why wouldn't that come in? You can impeach your own witness. What the penalty would be, why would that not come in? The maximum punishment. Because... If that guy's facing 30 years, why wouldn't it just spell it out? Right. I was facing... My plea agreement says I'm facing 30 years. I'm pleading guilty to a statute that gives me a maximum of 10 years. And all this other stuff means I'm hoping for the best. And I would reference... Including my testimony. Yes, sir. And I would reference the Kropp case as... And the Kropp case says there's discretion. Absolutely, in the sense it was not discretion... It wasn't... What the judge did there was not an abuse of discretion. Yes, sir. It limited, except although on the first part of what the district judge did, the Kropp opinion said was error. Well... Because it was going to be... Have some impact on what the judge did on the sentence of the guy who was on trial. That part was erroneous according to Kropp. Well, I would also... I would argue that Kropp is very important because not only do we talk about... Well, they teach you down there at that prosecutor's school in Columbia about this kind of stuff. About the limitation on cross-examination? Well, about not letting them cross-examine witnesses on what the maximum punishment is. They send you all to school down there. They do, Your Honor. That's right. They do. Somebody's telling you, giving you some hints on how to handle this kind of stuff because everybody's got the same issues. Well, and to be honest with you, my motivation in this case for trying to limit the defense's ability to talk about penalties is experiencing state court... But why do you want to hide that? I mean, the best way to do it is get it out on the table. Particularly when you've got a real strong case. I mean, you don't want everything to hide. Couple things. First, Your Honor, I would reference the Kropp decision in this standpoint. The court in Kropp is very clear and used the word slight or the phrase slight probative value as it relates to the specific quantitative questions as it relates to numbers. When it compared the slight probative value of what would be added if the jury knew the numbers with the danger for sympathy i.e. unfair prejudice, if it was put before the jury, how much time this defendant was looking at, that would undermine the government's ability to have a fair trial and potentially violate the dictates of 403. I would also mention this, that this court in Kropp, in looking at the limitation and assessing it in light of the Sixth Amendment, made clear inside the Luciano case what is important is... Lay down what the maximum penalty that the witness is facing doesn't deprive the government of a fair trial. You're not going to market that, I don't think. Well, and I probably should... You're a witness. But what I think it would do is it would interject before the jury a sentencing consideration that it would... The issue, though, you've got to give the defendant a fair trial before you ever get to a sentencing. He has a right under the Constitution to confront the witnesses on relevant evidence of bias and motive. And the government would argue, I would argue that the defendant... We had a case back here in 1999, one of my law clerks, I guess, found, Judge Wilkinson and I were actually on it, but Judge Widener, barring a criminal defendant from cross-examining witnesses on relevant bias and motive may violate the confrontation clause if the jury is precluded from hearing evidence from which it could appropriately draw adverse inferences of the witness's credibility. And I think that is... And if a witness is facing 50 years, was facing 50 years before he entered into his plea deal, and then he's up there on the witness stand telling... saying that Mr. Colvin was the culprit in the whole thing, the jury ought to be able to weigh that. Well, and, Your Honor, I would argue that, again, the question is whether or not there was sufficient evidence or whether defense counsel was allowed to put sufficient evidence before the jury to allow the jury to make a discriminating appraisal of the witness's credibility, and that is the language that... But I understand that the crop decision is you've got to let the jury make that appraisal, but that the appraisal did not necessarily... that there wasn't a... there wasn't an invariable entitlement to specific numbers. That's right. That's the holding of it, that you are entitled to have a substance of the break, and you are entitled to be able to speak of the magnitude of the break, but that there wasn't a Sixth Amendment entitlement to the specific numbers. And that's my understanding of crop, and that goes... The crop is limited to co-conspirators. In crop, co-conspirators... They were co-conspirators. The court's ruling here was beyond co-conspirators. It's correct. Wasn't that... It applied to all the co-operators. And all of them were not co-conspirators, so this was error. It went beyond crop. But I would argue, Your Honor, it was an error because, again, in crop, you're absolutely right that the co-conspirators were the witnesses in crop, but I think crop is useful because, again, it identifies the fact that... It does, but it's a different concern as the co-conspirators, and you can't... This panel can't deal with and that's a ruling beyond crop because some of these witnesses were not co-conspirators, and you haven't argued harmless error, have you? In the brief, I did, and I'd be happy to argue it if you'd like me to at this point, Your Honor. You brought up harmless error, didn't you? I did. In the brief, I did. And I'd be happy to move to harmless error if you'd like me to do that, but before I do that, I would mention this. I think the Turner case is also instructive, a case this court decided in 1999. That's the one I was just reading for you from. Yes, sir. In Turner, you had a witness who was potentially subject to the death penalty. The trial court in Turner did not allow defense counsel to get into the precise... or to get into the fact that this witness was potentially looking at the death penalty, and this court found that that was an abuse of discretion because the trial court premised the restriction on an improper legal basis. The trial court said that basically sentencing was in the trial court's purview and didn't look at it from the standpoint of the impeachment value of the numbers. And because there was an error of law, this court found that the trial court committed an abuse of discretion. But despite that, this court held that that error was harmless. And in the analysis this court underwent in doing the harmless error or in that discussion, it referenced the fact that this witness, who was potentially subject to the death penalty, testified that... No one was subject to the death penalty here, were they? No, Your Honor. But I think that's an even more extraordinary... Arguably, the fact that you're trying to avoid the death penalty is an even greater motive. And this court in Turner made the comment that the fact that the witness said her penalty was pretty serious was significant in conveying to the jury that the witness had a motive to lie. That was the defendant's girlfriend, wasn't it? That's correct, Your Honor. Now, the harmless error part of this... Before you get into the harmless error point, Judge King's right. There's an awful lot of evidence here, but a huge amount of evidence. Even if somebody is not entitled to specific numbers, and I'm not sure that that's a Sixth Amendment violation or an abuse of discretion on the part of the district court. Just as a matter of what the better practice is, why wouldn't you introduce the plea agreement? What's wrong? Simply, on direct examination, say, here's the plea agreement as issuers, and you can go into it. I always thought that direct examination, half the point of it, was to define cross-examination. I agree. I agree. Like I said, I do that. I do that now. It makes the witness so much more credible. It looks to the jury like you're not hiding the ball. You know that you're being up front, which is always a good thing to be with juries. I understand. You articulate your reason very well. You don't want the public to know how draconian these sentences are in federal court. That's really the reason. It is. It's interesting. You don't want the public to know what its government is doing. Well, I was a state prosecutor for a number of years. We used to get questionnaires back from jurors, and sometimes judges would have jurors sit in the courtroom when these defendants were sentenced. I would get questionnaire after questionnaire telling me from these jurors that if I knew how much time this defendant was looking at, I would not have found him guilty. I do think that's the motivation in this case, and that's been the motivation ever since this case because my limit is... The government is trying to hide the penalty so that the defendant would be more they will use that against the defendant more likely to convict you. I would argue the government hadn't tried to hide anything. Well, the best practice on that plea agreement, you said you redacted normally the penalties. I don't know why that even looks worse. You redact something. You've got to deal with the defendant with a witness. If the government's got a written agreement with the witness and he's going to say, I know, that's the entire deal. Everything they promised me is written down here. He always says that. You just lay it out. Put it all on the table. What's the problem? I can't see any counter-argument for not doing that, except trying to, as Judge Gregory said, trying to hide the ball. Your Honor, my goal in this case is not to hide the ball. Well, then you come up here and have to argue about it. That's the other thing. You don't have to come up here and argue about it if you just go ahead and get it to him. Well, the question is, what about the witnesses that weren't under any kind of plea agreement? Because I think there were a number of those that were not subject to a plea agreement. That's correct. And I think that part of the defendant wanted numbers, particular numbers, on that. And, you know, I don't think because, I mean, you're talking about two classes of witnesses here, one with formal plea agreement and the others with expectation. And I don't know how you can boil those expectations down to particular ranges and numbers. That's not a practical, that's not a very practical course to pursue. And I agree with that, Your Honor. And in the direct examinations of the witnesses, and I would... It's an easier thing to address witnesses with plea agreements than it is with somebody with an inchoate expectation. I would agree with that, but in the context of the reduction, and if you notice in the direct examination, the questions were, have you been promised a reduction? No. Why are you testifying? That's what I'm hoping for. Because at that stage, pre-sentence... Well, that's all you can get out of them in that regard. They're not sentenced yet. Counsel, I appreciate your candor about this in a sense, because I knew that the real reason had nothing to do with so much as to what it might do as to impugning the witness as it is, you really don't want the jurors to know, like I said, these incredible sentences that people are getting, particularly in drug cases. My question, though, is this, though. When the framers were some really brilliant people, when they framed our Constitution, they weren't there with this, but they were there with the whole idea of confrontation. So let's weigh that. Does the government's interest in not letting people know what these sentences have now morphed into, these incredible sentences, does that outweigh the idea that you should have as best you can a robust way to confront your witnesses and to lay forth what plainly is indicated as to what might detract from their truthfulness? I thought counsel made a good analogy, and you're learning counsel, he said, you mean to tell me if somebody's getting paid for testifying against me, I can't tell the juror that he's getting $50,000 versus $10? Now, it might be fine to say, no, generically, just know that he's being paid money. No, no, no, I want them to know if there's a big difference, are you getting $100,000 to testify against me, or $5 to testify against me? That's intrinsically different. So my question is, when we weigh constitutional principles, how does the government's interest in hiding the ball from the public trump constitutional protections of confrontation under the Sixth Amendment? And, Your Honor, I don't, I would respectfully not capture it in those terms. Again, the government, the government... But it's too late now, you've told us what the motive is. No, no, no, can you answer the question? But, what I'm arguing, Your Honor, is that we are trying to prevent, we are trying to prevent the jury from considering, from considering information that has, as this court would say, slight probative value and carries with it a high degree of the danger for unfair prejudice. Prejudice against who? Prejudice against the government. Well, but it's relevant, it does have a high degree of relevance to the bias and prejudice of the witness. If he's, if he's essentially the jailhouse doors locking in front of him instead of behind him, it makes a lot of difference. And when you say it, Your Honor, you're talking about the specific term of years? Yes, I mean, if instead of getting 40 years, he's going to get two. And I would just, and I would just reference this court's language from crop referencing slight probative value of quantitative questions. And my time is up. Thank you very much. Judge Wilson, to go back to where we left off, I do respectfully disagree with you. One of the other analogies I would like to bring to the court is when preparing the brief and going back and forth and just looking at the law and trying several cases in different district courts, many times the government comes in and they use the 404B evidence. And that is a tool the government loves to use. They continually want to bring in something one of my clients or another defense attorney's client has done in the past, whether they were convicted of it or not. They want to bring it in. And they ask the judge, judge, it's fine, all you have to do is read a curative instruction. Just instruct the jury. They don't need to use it for this limited information. That is the same remedy. That's a little different. As I understand it, what you're asserting here is an entitlement to numbers. Not only that, but I'm also going to give the court I mean, and I thought you were asserting it across the board and that you were saying, regardless of whether this was under a formal plea agreement or whether it was an informal understanding or what it was, that you wanted numbers with respect to each particular cooperating witness. You wanted exactly the number of years that they face and then the number of years that they might get or that they hope to get afterwards. And the point is these things may vary depending on in some instances district courts are going to be in some instances the numbers may be pretty clear exactly what the person was facing before and what they might be facing afterwards. But in many other witnesses, it's not going to be clear. The guideline range isn't going to be clear and the exact calculus and the extent of the break just isn't going to be clear. And that's why we have trial judges is to leave those sorts of things and some room for play in the joints to district judge depending upon how certain the numbers and the numerical calculation is and that was what Judge Irvin was getting at in the crop case which is that you have an absolute right to have the break that the witness is getting brought before the jury and you have a right to attach adjectives to that break. But that beyond that in terms of whether the judge, whether the jury gets to know exact numbers of that, we're going to leave some flexibility in the hands of the individual judge who's conducting the trial. And you know we can over script this stuff from the appellate bench and I think Judge Irvin who's a very wise man saw that. He spent years and years on the trial bench in North Carolina and he knew what he was talking about. And we're going to just completely take what seems to me a quintessential trial decision out of the trial judge's hand. When Judge Irvin wrote that it was of slight probative value, I don't think we can re-examine that. He said you know once you know that he's facing a huge break of supplying the numbers probably is of slight probative value. And he's indicated that there was a danger of unfair prejudice to the government. I don't think it's just a matter of holding of hiding the ball. It would be unfairly prejudicial if you say well I'm not going to sentence we're not going to find this person guilty because he might get the sentences that these other people got. And so you know that's not a proper consideration if the guilt fades. It just isn't. It's a question of whether the elements of the crime are met. And you throw this other thing in the table and it is extraneous and it does invite the jury to make a decision on a matter which is extraneous to its basic fact finding function of whether the elements of the crime are met. Again, how do you resolve it? You try to let the trial judge balance probative value against unfair prejudice. And that's classic rule 403 stuff. And you know over and over again we were asked to try to blueprint things for trial judges. We had one of the finest judges in this circuit, Judge Irvin, understanding that that was coming down the pike and saying no, we're not going to put you in that kind of straitjacket. As long as you make it absolutely clear that these people are testifying with the hope of a big big break. Judge, with that in mind, I think an appropriate remedy, as I started off describing 404B evidence, when that is used, it is continually used. And I would say at least half the federal criminal cases, at some point in time, 404B is attempted to be introduced and is usually introduced. And the remedy the government seeks is just an instruction to the jury that they're only to use this evidence for a specific reason. That is the same remedy that can be used for examination on the specific numbers that would eliminate the jury's and the court's and the government's concern that the jurors would look at that as the sentence that the defendant would get. Just as that curative instruction works on 403B evidence, it can be used to instruct the jury that you're not to consider this as a potential sentence for this defendant. I understand that, but it's thrown up to me all the time. All these curative instructions, people say, no, these curative instructions don't do any good. You really can't expect a curative instruction to resolve the 404B error and this is a 404B error and we're not going to attach, we shouldn't attach any weight. I mean, the council argues this all the time. This 404B error, we shouldn't attach any weight to the curative instruction. And that has a certain appeal to it. The point is that once it's there, once the evidence is there, juries don't always file a curative instruction. Curative instruction can't erase everything. I agree with you, Judge. I may have been in this courthouse arguing the exact same thing on 404B in the past. If you could come up and say, oh, curative instructions aren't worth a dog's ass. I think I actually have done that in this courtroom in the past few years. I hope it's before me because I remind you of this argument. I say, well, you said the curative instruction was a cure-all. I didn't say cure-all, Judge, just for the cross-examination. These cases of fairness, we've gotten so far out of fairness. I mean, the jurors have no idea that the people before them in terms of sentencing can later be sentenced for conduct that's been acquitted conduct and stuff they're not even charged with. So we're way out of kilter in terms of what a jury knows about. But I was thinking the irony of it is, I guess the jurors disqualified if they know the law, wouldn't they? If you read the federal code and you know the penalty for it, I guess you're disqualified because if you know the law. Because then you would know the maximum penalty. Because you can't say what they're charged with, right? Yes, sir. Right? So then if you know the law, you're disqualified to be a juror, aren't you? Under the theory of the government. And in the District of South Carolina, we're not allowed to ask the jurors any questions, and that's not one of the questionnaires whether they know the law or not, so we would never know that. You can't ask any questions? No voir dire in the District of South Carolina. You mean the judge knows the voir dire? There's voir dire. There's judges do the voir dire through the court. There's no voir dire by the lawyers. Correct. That's generally the way it's done everywhere. It's not unique to the state of South Carolina. Florida is different. The 11th Circuit is different. Right. Not all federal courts do that. I know that. But in South Carolina, you can't even. You can submit a question, right? You can submit all the questions you want. You can submit as many as you want. You can give a judge 10 pages of voir dire questions. He might use them. Do they say in South Carolina after the voir dire is done by the court, Counsel, do you have any questions? And then you have to say on record, no, I don't have any. You don't do that? I don't remember if they do that. They can say on the record, well, no, I don't have any. No, I'm very well. Don't you ask. I gave you a chance right here. Okay. Fine. Thank you, Judge. I see you're court appointed, Mr. Mason. Yes, sir. The fact that I directed a question or two at you or whatever doesn't mean I didn't really appreciate your argument. I know I speak for my colleagues when I say that the court really appreciates the effort that you made and the quality of your argument in the case. Well, I appreciate it when you grant oral arguments. Thank you.
judges: J. Harvie Wilkinson III, Robert B. King, Roger L. Gregory